IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| JACK ESKENAZI,<br>d/b/a AMERICAN HEALTH CARE CAPITAL,<br><br>Plaintiff,<br><br>v.<br><br>RURAL COMMUNITY HOSPITALS OF<br>AMERICA, LLC, *et al.*,<br><br>Defendants. | Case No. 4:18-cv-00307-SRB |

### ORDER

Before the Court is Defendants' Motion to Dismiss the Second Amended Complaint by Defendants Rural Community Hospitals of America, LLC, Empower Healthcare, LLC, Rural Health Partners, LLC, Paul L. Nusbaum and Jorge Perez, or, in the Alternative, Motion for a More Definite Statement (Doc. #48). For reasons discussed below, the motion is granted in part and denied in part.

**I.    Background**

According to Plaintiff's Second Amended Complaint, Plaintiff Jack Eskenazi, doing business as American Health Care Capital ("AHCC"), is a "nationwide mergers and acquisition firm focused on the health care industry" who acts as a "referral agent" to individuals and companies "in the medical field." (Doc. #47, ¶ 3). In this capacity, Plaintiff "bring[s] willing buyers and sellers together." (Doc. #47, ¶ 3). Rather than "negotiate the deals between those buyers and sellers," Plaintiff "brings them together to make an agreement between themselves and on their own terms." (Doc. #47, ¶ 3). To be compensated for these services, "Plaintiff relies on the good faith of his customers to notify Plaintiff that a deal has been made and pay the

monies owed to Plaintiff." (Doc. #47, ¶ 3). Such arrangements are embodied in written service contracts like the ones at issue in this case. Plaintiff alleges that Defendants withheld "finder's fees" to which he is entitled under enforceable service contracts he made with Defendants. (Doc. #47, ¶¶ 35, 47).

Plaintiff brings this suit on the basis of diversity jurisdiction against Defendants Rural Community Hospitals of America, LLC ("RCHA"), Empower Healthcare, LLC ("Empower"), Rural Health Partners, LLC ("RHP"), Paul L. Nusbaum, Jorge A. Perez, and fifty (50) Doe defendants. (Doc. #47, ¶¶ 5–7, 9–10). Plaintiff's Second Amended Complaint[1] contains four claims in total. Plaintiff brings 1) a breach of contract claim against Defendant RCHA; 2) a breach of contract claim against Defendants Perez, Empower, and RHP[2]; 3) a fraud claim against Defendants RCHA and Nusbaum[3]; and 4) a claim for breach of the covenant of good faith and fair dealing against the "Nusbaum Defendants" (Doc. #47, ¶¶ 21–73). Defendant moves to dismiss Plaintiff's Second Amended Complaint under Federal Rule of Civil Procedure 12(b) due to lack of personal jurisdiction, lack of standing, improper venue, and failure to state a claim upon which relief can be granted. (Doc. #48, p. 1). In the alternative, Defendant moves for a more definite statement under Rule 12(e). (Doc. #48, p. 1).

## II. Legal Standards

### A. Standing

Because Article III of the Constitution extends the subject-matter jurisdiction of federal courts only to "cases" and "controversies," a plaintiff must establish standing—i.e., that the plaintiff "personally '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged

---

[1] In a prior order, this Court denied Defendants' motion to dismiss Plaintiff's First Amended Complaint but granted their motion for a more definite statement. (Doc. #44).
[2] Plaintiff refers to Defendants Perez, Empower, and RHP collectively as "Perez Defendants." (Doc. #31, ¶ 7).
[3] Plaintiff refers to Defendants RCHA and Nusbaum collectively as "Nusbaum Defendants." (Doc. #31, ¶ 8).

2

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716 (8th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). "Constitutional standing . . . is a threshold question that determines whether a federal court has jurisdiction over a plaintiff's claims." *Kuhns*, 868 F.3d at 716. If a plaintiff cannot establish Article III standing, "the district court has no subject matter jurisdiction." *Young America Corp. v. Affiliated Computer Services (ACS) Inc.*, 424 F.3d 840, 843 (8th Cir. 2005) (quoting *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002)).

### B. Personal Jurisdiction and Fed. R. Civ. P. 12(b)(2)

When a defendant seeks dismissal for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citing *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d at 591–92 (8th Cir. 2011)). Personal jurisdiction is "either specific or general." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979–80 (8th Cir. 2015). Specific jurisdiction over a defendant exists when that defendant has sufficient minimum contacts with the forum state and those very contacts give rise to the plaintiff's claim. *Creative Calling Sols.*, 799 F.3d at 979–80 (citing *Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014)). General jurisdiction over a defendant exists when that defendant's contacts with the forum state "are so continuous and systematic as to render [the defendant] essentially at home" in that state, regardless of how the plaintiff's claim arose. *Daimler*, 571 U.S. at 127, 136–39 (holding that a corporation's principal place of business is a "paradigm" basis for general jurisdiction and discussing this paradigm's application to an L.L.C.). The forum court must have both statutory and constitutional authority to exercise either type of personal jurisdiction. *Creative Calling Sols.*, 799 F.3d at 979 (citing *K–V Pharm. Co.*, 648 F.3d at 592) ("A federal court may assume jurisdiction over a defendant in a

3

diversity action if the forum State's long-arm statute permits the exercise of personal jurisdiction and that exercise is consistent with the Due Process Clause.").

For statutory authority to exercise personal jurisdiction, a federal court looks to the law of the state where the court sits. Fed. R. Civ. P. 4(k)(1)(A); *see also Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler*, 571 U.S. at 125) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). Missouri's long-arm statute subjects "[a]ny person," "firm," or "corporation" to the personal jurisdiction of Missouri courts for "any cause of action arising from" that person, firm, or corporation's "transaction of any business within" Missouri, "making of any contract within" Missouri, or "commission of a tortious act within" Missouri. Mo. Rev. Stat. § 506.500.1(1)–(3). Missouri courts have long held that § 506.500 authorizes personal jurisdiction over out-of-state defendants "to that extent permissible under the Due Process Clause." *Good World Deals, LLC. v. Gallagher*, No. WD 81076, 2018 WL 3539851, at *4 (Mo. Ct. App. July 24, 2018) (quoting *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.3d 889, 892 (Mo. banc 1970)).

As to constitutional authority for exercising personal jurisdiction, the Due Process Clause "requires that the defendant purposely establish 'minimum contacts' in the forum state such that asserting personal jurisdiction and maintaining a lawsuit against the defendant does not offend 'traditional notions of fair play and substantial justice.'" *K-V Pharm. Co.*, 648 F.3d at 592 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985)). In the Eighth Circuit, courts consider five factors to determine "whether sufficient minimum contacts exist for personal jurisdiction: '(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to

the parties.'" *Id.* (quoting *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010)). While "the first three factors are primary factors, and the remaining two are secondary factors," courts consider all five factors "and the totality of the circumstances in deciding whether personal jurisdiction exists." *Id.*

Even if the minimum contacts requirement is met, "personal jurisdiction may be defeated" if exercising it would be nonetheless unfair "considering such factors as (a) the burden on the defendant; (b) the interest of the forum State; (c) the plaintiff's interest in obtaining relief; (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (e) the shared interest of the several states in furthering fundamental substantive social policy." *St. Jude Medical, Inc. v. Lifecare Intern., Inc.*, 250 F.3d 587, 591 (8th Cir. 2001) (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113–14 (1987)); *Burger King*, 471 U.S. at 476–77 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945) ("Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'")).

### C. Venue Under 28 U.S.C. § 1391 and Fed. R. Civ. P. 12(b)(3)

Federal statute provides that "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). A party may move to dismiss an action for improper venue under Rule 12(b)(3). The Eighth Circuit has held that a defendant moving to dismiss for improper venue "bears the burden of establishing improper venue." *Brigdon v. Slater*, 100 F. Supp. 2d 1162, 1164 (W.D.

Mo. 2000) (citing *United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947)) (noting that "nationally there is a split of authority on the issue"). *See also Luebbert v. Employers and Operating Engineer Local 520 Pension Fund*, No. 4:06CV01140ERW, 2007 WL 1100455, at *2 n.3 (E.D. Mo. Apr. 10, 2007) (noting that "[a]t least three district courts within the Eighth Circuit have held otherwise, but each has failed to cite to *Orshek*" and that, "[w]hile there are valid arguments for requiring a plaintiff to establish venue, the Court is bound by *Orshek*"); *Myers v. American Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982) (citing *Orshek*, 164 F.2d at 742) (holding that because issue of venue, "unlike the jurisdictional issue, is not whether the court has authority to hear the case but simply where the case may be tried," a party seeking "dismissal for improper venue under Rule 12 . . . has the burden of proving the affirmative defense asserted by it").

### D. Pleading Under Fed. R. Civ. P. 8, 9, and 12(b)(6)

Rule 8(a)(2) requires any "pleading that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than" conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 807 (8th Cir. 2013) (internal quotations omitted) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 807 (8th Cir. 2008) ("While Rule 8(a) requires very little, it does require fair notice of the claim and the grounds upon which the claim rest[s]."). An opposing party may move to dismiss the pleading party's complaint under Rule 12(b)(6) on the ground that the pleading party

has "failed to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, the pleading party's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (internal citations omitted); *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015).

Rule 9 imposes requirements that apply when a party pleads "special matters." Rule 9(b) establishes a heightened pleading standard—i.e., higher than that of Rule 8(a)—for claims alleging fraud, requiring a party "to state with particularity the circumstances constituting" such alleged fraud. *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (holding that Rule 9(b) requires a plaintiff to plead "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby" and that "[i]n other words, the party must typically identify the who, what, where, when, and how of the alleged fraud"). While "the level of particularity required depends on the nature of a case," a plaintiff does not satisfy Rule 9(b) by alleging "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive." *E-Shops Corp. v. U. S. Bank Nat. Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012) (quoting *BJC Health Sys.*, 478 F.3d at 917). Rule 9(c) establishes the standard for pleading conditions precedent.[4] When a party pleads conditions precedent, "it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). In contrast, "when denying that a condition precedent has occurred or been performed, a party must do so with particularity." *Id.*

---

[4] Courts disagree about whether Rule 9(c) imposes an affirmative duty to plead conditions precedent, *see Wanjiku v. Johnson Cty.*, 173 F. Supp. 3d 1217, 1236 (D. Kan. 2016), or whether Rule 9(c) merely sets the standard for alleging performance of conditions precedent if such performance is pleaded. *See Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 647–48 (E.D.N.Y. 2012). The Eighth Circuit has not expressly ruled on this issue.

7

### E. More Definite Statement Under Fed. R. Civ. P. 12(e)

Rule 12(e) allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Motions under Rule 12(e) "are 'designed to strike at unintelligibility rather than lack of detail in the complaint.'" *Allstate Indem. Co. v. Dixon*, 304 F.R.D. 580, 582 (W.D. Mo. 2015) (quoting *Tinder v. Lewis Cnty. Nursing Home Dist.,* 207 F. Supp. 2d 951, 960 (E.D. Mo. 2001)). A motion for a more definite statement is appropriate "where a party cannot determine the issues he must meet or where there is a major ambiguity or omission in the complaint such that the complaint is unanswerable." *Dixon*, 304 F.R.D. at 582 (citing *Pfitzer v. Smith & Wesson Corp.,* No. 4:13–CV–676–JAR, 2014 WL 636381, at *1 (E.D. Mo. Feb. 18, 2014)) (noting that, while Rule 12(e) motions are "disfavor[ed]" due to the "liberal standards of notice pleading and the availability of extensive discovery," courts are nonetheless "willing to sustain a Rule 12(e) motion where a complaint fails to satisfy the particularity requirements of Rule 9(b)").

### III. Discussion

#### A. Standing

Defendants argue that "there appears to be a standing issue" because Plaintiff has failed to "plead who he is, how he may bring this action, and how he was related to the documents at issue," which Defendants argue Plaintiff is required to do. (Doc. #49, p. 11). Defendants argue that the documents attached to Plaintiff's Second Amended Complaint do not show Plaintiff acting "as a d/b/a sole proprietorship." (Doc. #49, p. 11). Plaintiff argues the Second Amended Complaint establishes Plaintiff's standing to sue and "[t]hat contracts may have been signed by [Plaintiff's] authorized employees or agents on his behalf does not create an 'apparent' standing

issue." (Doc. #53, p. 4). Moreover, the Second Amended Complaint alleges that "American Health Care Capital has been registered as the dba of Jack Eskenazi with the County of Los Angeles since about 1990 and has been renewed regularly since then." (Doc. #47, ¶ 1).

Here, Plaintiff has standing to sue. The Second Amended Complaint alleges that Plaintiff personally suffered an injury in fact, the main element of standing challenged by Defendants. Plaintiff's allegation that Jack Eskenazi was doing business as AHCC during the time of the alleged misconduct is sufficient to establish the injury in fact requirement. Moreover, the Second Amended Complaint sufficiently alleges that Plaintiff's injury was fairly traceable to Defendants' conduct and that a favorable decision in this Court would likely redress Plaintiff's injury.

### B. Personal Jurisdiction

Defendants argue that the Second Amended Complaint "continues to be defective as to the pleading of both jurisdiction and venue" because "it is entirely unclear, not only what wrongdoing is alleged against each of these Defendants, but **where** such wrongdoing is alleged to have occurred." (Doc. #49, p. 9) (emphasis in original). In particular, Defendants argue that the Second Amended Complaint "is unclear as to the connections of these defendants to Missouri." (Doc. #49, p. 9). Plaintiff argues that "[a]t this stage of the proceedings" the allegations in Plaintiff's Second Amended Complaint satisfy Missouri's long-arm statute, the due process clause, and venue requirements because "[i]t is factually alleged the Nussbaum defendants are located in Missouri, in the Western District"; the Second Amended Complaint "alleges defendants acted together to breach contracts with plaintiff and commit misrepresentation to deprive plaintiff of compensation due"; and "[t]hose contacts involve property and business opportunities in Missouri." (Doc. #53, p. 4). Plaintiff also argues that

Defendants transacted business in Missouri, entered into Nussbaum/RCHA Agreement as headquartered in Missouri, and committed the alleged intentional misrepresentation as headquartered in Missouri." (Doc. #53, p. 4). Moreover, Plaintiff argues that disputed agreements "relate to each other and plaintiff" and both "involve, in part, the same hospital and business located in Sweet Springs, Missouri." (Doc. #53, p.4).

At this stage in the litigation, Plaintiff has sufficiently pleaded this Court's personal jurisdiction over Defendants RCHA, RHP, and Empower. Plaintiff's Second Amended Complaint alleges that this Court has personal jurisdiction over Defendants "because Defendants have availed themselves of and have done business in this District and the State of Missouri."[5] (Doc. #47, ¶ 15). In particular, Plaintiff alleges that "the contractual agreements with the Perez Defendants described herein involve, in part, business opportunities in Missouri." (Doc. #47, ¶ 15). Plaintiff further alleges that the Nusbaum Defendants are subject to this Court's personal jurisdiction under Mo. Rev. Stat. § 506.500 because "their office is located in Kansas City, Missouri and the business opportunity identified in the RCHA/Nussbaum Agreement, identified below and herein, is described as being headquartered in Kansas City, Missouri and one of the opportunities was located in Missouri, namely, I-70 Community Hospital, 105 E. Hospital Drive, Sweet Springs, Missouri 65351." (Doc. #47, ¶ 19). Plaintiff further alleges that the Perez Defendants are subject to this Court's personal jurisdiction under Mo. Rev. Stat. § 506.500 because "the business opportunity identified in the Perez Agreements, as identified herein, is the same business opportunity referred to in the RCHA/Nussbaum Agreement, identified and described as being headquartered in Kansas City, Missouri and one of the opportunities was

---

[5] As stated in a prior order, Plaintiff has sufficiently pleaded this Court's general personal jurisdiction over Defendant RHCA because its headquarters are located in Kansas City, Missouri. (Doc. #44, p. 6) (citing *Daimler*, 571 U.S. at 136–39).

located in Missouri, namely, I-70 Community Hospital, 105 E. Hospital Drive, Sweet Springs, Missouri 65351." (Doc. #47, ¶ 20). Moreover, as Plaintiff points out, the Nusbaum Defendants' acknowledged in their prior motion to dismiss and related declaration of Paul Nusbaum in the prior lawsuit in California federal court "that either Missouri or West Virginia were the Courts that had jurisdiction over the Nusbaum Defendants and it was in either of those Courts that this matter should be adjudicated." (Doc. #47, ¶ 18) (citing Docs. # 47-1, #47-2). These allegations are sufficient to establish personal jurisdiction over Defendants RCHA, Empower, and RHP under Mo. Rev. Stat. § 506.500 and the Due Process Clause.[6]

In contrast, Plaintiff's pleadings are insufficient to show this Court's personal jurisdiction over Defendants Paul Nusbaum and Jorge Perez. The Second Amended Complaint alleges that Paul Nusbaum is a resident of West Virginia and that Jorge Perez is a resident of Florida. (Doc. #47, ¶¶ 9–10). Moreover the Second Amended Complaint does not allege that Defendants Nusbaum and Perez, as individuals, have "sufficient minimum contacts" with Missouri or that any of Plaintiff's claims arise from any contacts that Nusbaum or Perez may have with Missouri. *See K-V Pharm. Co.*, 648 F.3d at 592. Therefore, to the extent Defendants seek dismissal of Plaintiff's claims against Paul Nusbaum and Jorge Perez for lack of personal jurisdiction, Defendants' motion is granted.

### C. Venue

As to venue, Defendants RCHA, RHP, and Empower, have not shown that the Western District of Missouri is an improper venue. Defendants argue that Plaintiff's Second Amended Complaint "is unclear as to the connections of these defendants to Missouri" and that "[w]ithout this information, venue has not been appropriately pled and established." (Doc. #49, p. 9).

---

[6] The parties are free to conduct discovery on the matter of personal jurisdiction and refile this motion if discovery proves jurisdiction is improper.

11

Plaintiff argues that the Western District of Missouri is the proper venue in this case under 28 U.S.C. § 391(b) because "a substantial part of the events and omissions giving rise to the Complaint arose in this District." (Doc. #47, ⁋ 16). Defendants have not carried their burden of showing that the Western District of Missouri is an improper venue. *See Orshek*, 164 F.2d at 742. This is especially so in light of this Court's proper exercise of personal jurisdiction over Defendants RCHA, RHP, and Empower.

### D. Pleading

#### i. Fair Notice

According to Defendants, the Second Amended Complaint falls short of satisfying Rule 8 by "impermissibly lump[ing]" Defendants together in a way that fails to give fair notice of the particular claims brought against each of them. (Doc. #49, p. 13). Defendants assert that "other than in the initial breach of contract claim, **nowhere** in the Second Amended Complaint are the Defendants individually alleged to have perpetrated any wrongdoing; in each case, the Defendants are alleged as one group of defendants who are all simultaneously alleged to have done wrong." (Doc. #49, p. 14) (emphasis in original). According to Plaintiff, "[t]he argument that the individual Defendants do not have fair notice of the plaintiff['s] specific claims" against each of them "defies credulity" because "[e]ach of the obligations and the respective breaches, failures to disclose, and other tortious acts are identified separately for each Defendant." (Doc. #53, p. 8) (citing Doc. #47, ¶¶ 21–37, 39–50). Plaintiff argues that "[a]ny asserted 'lumping together' of the defendants in some allegations is required because they at times acted together to the point they are one and the same, all as alleged in the" Second Amended Complaint. (Doc. #53, p. 8).

The Second Amended Complaint gives Defendants fair notice of the claims Plaintiff brings against them. *See Horras*, 729 F.3d at 807. The point headings denoting each Count in the Second Amended Complaint specify the particular Defendants each claim is brought against. Moreover, Plaintiff's prior claim for declaratory relief stated in the First Amended Complaint, which was unclear regarding the particular defendants it was brought against, has been omitted from the Second Amended Complaint. Plaintiff therefore has not "lumped together" Defendants in a way that fails the fair notice requirement of Rule 8. Moreover, as discussed below, Counts I–IV of Plaintiff's Second Amended Complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

### ii. Counts I and II: Breach of Contract

Defendants argue that "Count I is unintelligible and does not appear to properly allege a breach of contract" because the disputed contract is between RCHA and American HealthCare Capital, which is "a non-party." (Doc. #49, pp. 15–16). Defendants also point out that the contracts attached to the Second Amended Complaint "are 'non-disclosure' agreements between Empower and American HealthCare Capital and Rural Health Partners and American HealthCare Capital" and argue that "Count II fails to provide a contract with Jorge Perez" and "fails to allege any facts as to how the purported 'non-disclosure' agreements were breached." (Doc. #49, p. 17). Plaintiff argues that "Defendants either misstate, misread or overlook the clear language of the minimum finder's fee stated in the Nusbaum Agreement." (Doc. #53, p. 9) (citing Doc. #47-3, p. 1). According to Plaintiff, the Second Amended Complaint sufficiently "alleges the undisclosed relationship between the Nusbaum defendants and Perez defendants, which led to the breaches of those agreements and the failure to pay compensation to plaintiff under the Nusbaum/RCHA agreement" to survive a Rule 12(b)(6) dismissal. (Doc. #53, p. 9).

13

Moreover, Plaintiff argues that AHCC is not a "non-party" as Defendants assert because "as alleged in the [Second Amended Complaint], Jack Eskenazi and AHC[C] are the same" and likewise "AHC does not have an existence independently of Jack Eskenazi." (Doc. #53, p. 9) (emphasis in original).

Here, Plaintiff has stated plausible breach of contract claims in Counts I and II. Under California law,[7] which the parties acknowledge may govern the disputed contracts, the elements for a breach of contract action are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) (citing *Reichert v. General Ins. Co.*, 442 P.2d 377, 381 (Cal. 1968) (en banc)). Counts I and II of the Second Amended Complaint plausibly state claims for relief under these elements. (Doc. #47, ¶¶ 21–50).

Defendants also challenge Plaintiff's breach of contract claims on the ground that Plaintiff has failed to allege a proper license, which Defendants argue is required for brokering business opportunities as Plaintiff alleges to have done. Defendants cite Missouri law and argue that "[i]t would appear in all cases that Plaintiff must maintain a license to engage in such a transaction [as Plaintiff alleges] and has not pled the existence of" such a license. (Doc. #49, pp. 11–12) (citing *Knight v. Johnson*, 741 S.W.2d 842, 845–46 (Mo. Ct. App. 1987)). Defendants also acknowledge that California "appears to be a possible choice of law under the Exhibits to the Second Amended Complaint" but argue that California law "is even worse for Plaintiff" because it "goes even further" than Missouri law does by requiring a "business opportunity

---

[7] At the summary judgment stage, the parties may need to brief which state's law governs each of Plaintiff's claims. Because Plaintiff alleges that California law governs the disputed contracts and Defendants concede that California "is a possible choice of law," and because neither party conducted a choice of law analysis in their briefs, this Court will refer to California law when discussing the disputed contracts for purposes of this motion.

14

broker's license to maintain an action for his commission." (Doc. #49, p. 12) (citing *All Points Traders, Inc. v. Barrington*). Plaintiff's Second Amended Complaint alleges that "Plaintiff did not require a license for the services provided to the Defendants" because "Plaintiff simply acted as a 'finder' of the business opportunity," meaning that "Plaintiff merely introduced the defendants to each other and never negotiated or otherwise participated in any deal between the defendants." (Doc. #47, ¶ 29). Citing California law, Plaintiff argues that a "long-standing and well established exception to th[e] statute" requiring licenses for brokers of business opportunities applies to a "'finder'—someone who vets and introduces a seller and buyer but does not get involved in the negotiations." (Doc. #53, p. 5) (citing *Tyrone v. Kelley*, 507 P.2d 65, 69–72 (Cal. 1973) (en banc)). Here, Plaintiff's Counts I and II remain plausible claims for relief. On its face, the Second Amended Complaint plausibly alleges that the contracts fall under California's exception for "finders" of business opportunities. Without discovery or proper briefing on choice of law, these allegations are sufficient to survive dismissal for failure to state a claim.

Finally, Defendants challenge Plaintiff's breach of contract claims on the ground that the Second Amended Complaint fails Rule 9(c) by not alleging conditions precedent. Defendants argue that "the Exhibits attached to the Second Amended Complaint seem to indicate certain pre-suit requirements; in most cases, pre-suit conferral or ADR," and that Plaintiff's failure to address conditions precedent in the Second Amended Complaint falls short of Rule 9(c). (Doc. #49, p. 15). Plaintiff argues that pleading conditions precedent is not required because the Second Amended Complaint and attached exhibits do not contain conditions precedent "and none are alleged." (Doc. #53, p. 8). Whether or not Plaintiff has a duty to plead conditions

precedent under Rule 9(c), that Rule does not provide a basis for dismissing Plaintiff's breach of contract claims because Plaintiff plausibly alleges that none exist.

### iii. Count III: Fraud

Defendants argue that Plaintiff's Second Amended Complaint fails Rule 9(b)'s heightened pleading standard for fraud allegations because the allegations in Count III "lack[] sufficient detail" and "the elements of [Count III are] not set forth with specificity as to each Defendant." (Doc. #49, pp. 15–16). Defendants also argue that "[i]f the alleged [fraud] was governed under any of the agreements attached to the Second Amended Complaint, then such conduct is relegated to an action in contract, and the tort claim fails" because "Missouri's economic loss rule 'prohibits a cause of action in tort where losses are purely economic.'"[8] (Doc. #49, p. 17–18) (quoting *Four Seasons Grp., Inc. v. Thyssenkrupp Elevator Corp.*, No. 2:10-cv-c-04004-NKL, 2010 WL 1539815, at *1 (W.D. Mo. Apr. 19, 2010)). Plaintiff argues that "[n]o additional specificity should be required" in the Second Amended Complaint because it "contains additional specific factual allegations concerning the defendants' fraudulent concealment." (Doc. #53, p. 8) (citing Doc. #47, ¶¶ 51–66). Plaintiff further argues that the economic loss rule does not apply to this case because Count III asserts claims involving fraud or misrepresentation. (Doc. #53, p. 10). Plaintiff points out that "divisions of this Court hold the Economic Loss Doctrine does not apply to claims involving fraud or misrepresentation, such as specifically raised in this case." (Doc. #53, p. 10) (citing *MEA Fin. Enters., LLC v. Fiserv Sols., Inc.*, No. 13-CV-05041-BP, 2013 WL 12155467, at *3 (W.D. Mo. Oct. 16, 2013)). Plaintiff claims that the Western District of Missouri has "held the Economic Loss Doctrine does not

---

[8] Again, At the summary judgment stage, the parties may need to brief which state's law governs each of Plaintiff's claims. Because the parties suggest that Missouri law applies to Plaintiff's fraud claim and because neither party conducted a choice of law analysis in their briefs, this Court will refer to Missouri law when discussing Plaintiff's fraud claim for purposes of this motion.

apply to contracts for services" and that the Nusbaum Agreement "alleged to have been breached by Defendants, is a finder's contract, *i.e. one for services*." (Doc. #53, p. 10) (emphasis in original) (citing *Id.*).

At this stage in the litigation, Plaintiff has sufficiently alleged fraud because Count III of the Second Amended Complaint states a claim for relief that is plausible on its face and that complies with the particularity requirement of Rule 9(b). Plaintiff's allegations regarding the communications between his agent and the Defendants, (Doc. #47, ¶¶ 52–68), sufficiently identify "the who, what, where, when, and how of the alleged fraud." *See BJC Health Sys.*, 478 F.3d at 917. Moreover, in light of decisions such as *MEA*, 2013 WL 12155467, Defendant has plausibly alleged a claim for fraud. *See id.* at *3 ("Although the case law is somewhat inconsistent, analysis of the law leads this Court to conclude the Missouri Supreme Court would not apply the economic loss doctrine to MEA's tortious interference or fraudulent misrepresentation claims.").

### iv. Count IV: Breach of Implied Covenant of Good Faith and Fair Dealing

According to Defendants, "Count IV seems to be a tort count, claiming that by breaching their alleged contracts, in this case the implied covenant of good faith and fair dealing, Defendants committed some sort of tort," but "Count IV is so unintelligible that no response can be had." (Doc. #49, p. 17). According to Plaintiff, the Second Amended Complaint sufficiently "alleges the undisclosed relationship between the Nusbaum defendants and Perez defendants, which led to the breaches of those agreements and the failure to pay compensation to plaintiff under the Nusbaum/RCHA agreement" to survive a Rule 12(b)(6) dismissal. (Doc. #53, p. 9).

Here, at this stage in the litigation, Plaintiff has alleged a plausible claim for breach of the implied covenant of good faith and fair dealing. *See Guz v. Bechtel Nat. Inc.*, 8 P.3d 1089, 1112

17

(Cal. 2000) ("A breach of the contract may also constitute a breach of the implied covenant of good faith and fair dealing."); *Brandt v. Superior Court*, 693 P.2d 796, 798 (Cal. 1985) (internal quotations and citations omitted) (breaching party is "liable for any damages which are the proximate result of that breach"). Plaintiff's Second Amended Complaint alleges that the Defendants went "'behind Plaintiff's back' [and] enter[ed] into a business arrangement . . . without notifying Plaintiff" and that in doing so Defendant breached the covenant of good faith and fair dealing implied in every contract. (Doc. #47, ¶¶ 70–73). Moreover, Plaintiff alleges that this breach directly and proximately caused Plaintiff to sustain damages. At the dismissal stage, such allegations are sufficient to survive a motion to dismiss.

### E. More Definite Statement

Finally, Defendants argue that this Court should at least order a more definite statement that would require Plaintiff to "identify the acts complained of against each Defendant" and to "clean up" the Second Amended Complaint. (Doc. #49, p. 18). Because the Court finds that Plaintiff states plausible claims for relief against Defendants RCHA, Empower, and RHP, the motion for a more definite statement is denied.

### F. Conclusion

Accordingly, Defendants' Motion to Dismiss Second Amended Complaint by Defendants Rural Community Hospitals of America, LLC, Empower Healthcare, LLC, Rural Health Partners, LLC, Paul L. Nusbaum and Jorge Perez, or, in the Alternative, Motion for a More Definite Statement (Doc. #32) is granted in part and denied in part without prejudice. The motion is granted only to the extent that Plaintiff's claims against Defendants Paul Nusbaum and Jorge Perez, as individuals, are dismissed for lack of personal jurisdiction. Otherwise,

Defendants' motion to dismiss is denied without prejudice. Defendants' motion for a more definite statement is denied.

      **IT IS SO ORDERED.**

                                              /s/ Stephen R. Bough
                                              STEPHEN R. BOUGH
                                              UNITED STATES DISTRICT JUDGE

Dated: December 7, 2018